UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE STERLING,

          Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

Civil Action No.: 18-13770
Honorable Denise Page Hood
Magistrate Judge Elizabeth A. Stafford

_____/

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 12, 13]**

Plaintiff Dale Sterling appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his applications for disability insurance benefits (DIB) and supplemental social security income benefits (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court **RECOMMENDS** that:

- Sterling's motion [ECF No. 12] be **DENIED**;
- the Commissioner's motion [ECF No. 13] be **GRANTED**; and
- the Commissioner's decision be **AFFIRMED** under sentence four

of 42 U.S.C. § 405(g).

I.  **BACKGROUND**

   A.  **Sterling's Background and Disability Applications**

Born September 5, 1990, Sterling was 26 years old when he applied for DIB and SSI in March 2016.  [ECF No. 8-5, PageID.211, 213].  He has a high school education and the vocation expert (VE) classified his past relevant work as a composite job consisting of manager, food service and stock clerk.  [ECF No. 8-2, PageID.45; ECF No. 8-6, PageID.254-255].  Sterling alleges a disability onset date of September 1, 2015, and that he is disabled because of aortic aneurysm, Marfan's Syndrome, chest pain, shortness of breath, hypertension, fatigue and depression.  [ECF No. 8-6, PageID.253-254].

After the Commissioner denied both disability applications initially, Sterling requested a hearing, which took place in October 2017, and during which he and a vocational expert (VE) testified.  [ECF No. 8-2, PageID.52-81].  In a March 2018 written decision, the ALJ found Sterling not disabled.  [*Id.*, PageID.37-47].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Sterling timely filed for judicial review.  [*Id.*, PageID.27-29; ECF No. 1].

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1] Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity and will find the claimant not disabled if he or she can still do past relevant

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c); § 920(c).

3

work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Sterling was not disabled.  At the first step, he found that Sterling had not engaged in substantial gainful activity since his alleged onset date.  [ECF No. 8-2, PageID.39].  At the second step, he found that Sterling had the severe impairments of "history of aneurysm and Marfan syndrome[3]; affective and anxiety disorders; degenerative disc disease; and left shoulder tendinopathy."  [*Id.*]  Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  [*Id.*, PageID.40-41].

Between the third and fourth steps, the ALJ found that Sterling had

---

[3]"Marfan syndrome is a genetic disorder that affects the body's connective tissue. . . .  Features of the disorder are most often found in the heart, blood vessels, bones, joints, and eyes." https://www.marfan.org/about/marfan (last visited on October 10, 2019).

4

the RFC to perform light work[4] except:

> [H]e can occasionally climb ramps and stairs; he can never climb ladders, ropes, and scaffolds; he can frequently stoop, crouch, and kneel; he can occasionally crawl; he can occasionally reach overhead with left arm; he can frequently reach laterally with his left arm; he must avoid concentrated exposure to extreme head and cold, loud noise, vibrations, and hazards.  With respect to understanding, remembering, and carrying out instructions, he is limited to performing simple, routine tasks.  With respect to the use of judgment, he is limited to simple work-related decisions.

[ECF No. 8-2, PageID.41].  At step four, the ALJ found that Sterling could not perform any past relevant work.  [*Id.*, PageID.45].  But after considering Sterling's age, education, work experience, RFC and the testimony of the VE, the ALJ found that he could perform other jobs in the national economy, including as a sorter, merchandise marker and routing clerk.  [*Id.*, PageID.46].

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

## II.   ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Sterling argues that the ALJ failed to evaluate properly whether his impairment met or medically equaled Listing 4.10. The Court finds that Sterling has not met his burden of showing reversible error.

### B.

Sterling was diagnosed with a dissecting aneurysm of the thoracic aorta and underwent a surgical repair in 2014. [ECF No. 8-7, PageID.316, 322]. Sterling argues that the ALJ erred at step three when finding that his

6

impairment did not meet or medically equal Listing 4.10, which applies to aneurysm of the aorta.  [*See* ECF No. 8-2, PageID.40-41].  "A claimant must satisfy all of the criteria to meet the listing."  *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 653 (6th Cir. 2009) (citing 20 C.F.R. § 404.1525(c)(3).  An impairment is medically equivalent to a listing if "it is at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 1526(a).

To support his argument that the ALJ committed reversible error, Sterling "must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing."  *Smith–Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432-33 (6th Cir. 2014).  His burden is high. "Because satisfying the listings during the third step yields an automatic determination of disability based on medical findings . . . the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five-step evaluation."  *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014).  Sterling fails to meet his burden.

Listing 4.10 applies to "[a]neurysm of aorta or major branches, due to any cause (e.g., atherosclerosis, cystic medial necrosis, Marfan syndrome, trauma), demonstrated by appropriate medically acceptable imaging, *with*

*dissection not controlled by prescribed treatment* (*see 4.00H6).*" 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 4.10 (emphasis added). An aneurysm has a dissection not controlled by prescribed treatment when the claimant experiences one of the following criteria: "[1] persistence of chest pain due to progression of the dissection, [2] an increase in the size of the aneurysm, or [3] compression of one or more branches of the aorta supplying the heart, kidneys, brain, or other organs." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 4.00(H)(6); *see also Gerrick v. Comm'r of Soc. Sec.*, No. 16-2664, 2017 WL 5992235, at *1 (6th Cir. Aug. 14, 2017). Sterling relies on the first criterion; he claims that the medical evidence shows that he "continued to experience persistent chest pain and symptoms despite prescribed treatment." [ECF No. 12, PageID.506].

But showing persistent pain is not enough; Sterling's burden is to show that the persistent pain was "*due to progression of the dissection.*" § 4.00(H)(6) (emphasis added). The evidence here does not show that Sterling's dissection progressed after his surgery. In fact, in October 2015, a CT scan of the aorta "showed no evidence of acute dissection or change from previous." [ECF No. 8-7, PageID.326]. Sterling refers to this CT scan when describing a February 2016 emergency room visit, and thus implies that the CT scan was from this latter visit, but the scan was done in

8

October 2015. [ECF No. 12, PageID.506, citing ECF No. 8-7, PageID.336 (Tr. 305)]. Sterling also suggested that the October 2015 CT scan evidenced that his dissection was progressing; he made this suggestion by emphasizing that the CT scan showed a "*dissection flap that extends from the proximal aortic arch to the aortic bifurcation.*" [*Id.* (emphasis added in Sterling's brief, ECF No. 12, PageID.506]. But again, the medical record from the October 2015 emergency room visit described the CT scan as showing no change in Sterling's dissection since the previous scan. [ECF No. 8-7, PageID.326].

And while the records Sterling cites corroborate that he has had persistent pain, that pain has not been attributed to his dissection. Sterling cites the October 2015 emergency room visit, when he complained of bilateral chest pain, but the problem was "likely musculoskeletal pain secondary to muscle strain or tightness." [ECF No. 8-7, PageID.322, 326]. As noted, the CT scan of the aorta did not evidence progression of the dissection, and he was discharged in good condition. [*Id.*]. Sterling next refers to a February 2016 emergency room visit, during which he again complained of chest pain. [*Id.*, PageID.327]. At this visit, his cardiovascular and chest examinations were normal; the chest x-ray was normal; and the CT scan results were unchanged. [*Id.*, PageID.328-329].

9

Sterling was discharged in good condition with a recommendation that he take ibuprofen. [*Id.*, PageID.299].

Sterling states that he went to the emergency room again in March 2016, but the record he cited is actually a consultation with Roderick Beer, M.D., after a referral from Sterling's primary care doctor. [ECF No. 8-7, PageID.454-456]. Dr. Beer found that Sterling had pain in the upper back, especially between the shoulder blades, that radiated into the chest wall, and he diagnosed Sterling with upper thoracic radicular pain, diffuse upper back pain and possible musculoskeletal pain. [*Id.*]. Dr. Beer recommended that Sterling undergo a thoracic MRI and have physical therapy to strengthen and relax the muscles. [*Id*]. Although Dr. Beer described Sterling as having tenderness around his dissection surgery scars, there was no suggestion that Sterling's dissection was progressing or that it was the cause of his pain. [*Id*].

Sterling finally cites records from the Milan Family Practice. Those records—from January 2015, August 2015 and February 2016—show that each examination was negative for chest pain except for radiating musculoskeletal pain. [ECF No. 8-7, PageID.360, 371-372, 374, 381].

Sterling has pointed to no medical evidence showing that he reasonably could meet or equal every requirement of Listing 4.10, as

10

required for a finding of reversible error.  *Smith–Johnson*, 579 F. App'x at 432-33.  To the contrary, the records Sterling cites constitute substantial evidence supporting the ALJ's finding that "the record does not support that there is dissection uncontrolled by medical treatment." [ECF No. 8-2, PageID.40].  The ALJ's decision should be affirmed.

### III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Sterling's motion for summary judgment [ECF No. 12] be **DENIED**; that the Commissioner's motion [ECF No. 13] be **GRANTED**; and the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

|  |  |
|---|---|
| Dated: October 11, 2019 | s/Elizabeth A. Stafford<br>ELIZABETH A. STAFFORD<br>United States Magistrate Judge |

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.